## Riddle Coal Company v. Bell.

(Decided November 27, 1925.)

### Appeal from Bell ·Circuit Court.

1. Sales—Evidence Held to Show that Seller Considered Contract Still in Effect After Request to Hold Up Shipment of Balance Until Further Notice.—In action for damages by failure to ship coal, evidence held to show that, notwithstanding seller's breach of its terms as to delivery, defendant considered contract still in existence after request to hold up balance of cars unshipped until further notice.

2. Sales—Failure to Ship at Rate Provided by Contract Held Waived by Receipt of Shipment Without Complaint and Request to Hold up Further Shipment Until Further Notice.—Buyer receiving coal shipped without complaint, and requesting seller to hold up shipment of balance until further notice, held to have waived failure to ship at rate of two cars per week as provided by contract.

3. Sales—Buyer Waiving Delay in Rate of Shipment Liable for Subsequent Failure to Take Remaining Cars.—Buyer waiving seller's failure to ship two cars of coal per week under contract by receiving coal shipped without complaint, and requesting seller to withhold further shipment until further notice, held liable in damages to seller for failure to take remaining cars.

N. R. PATTERSON for appellant.

LOW & BRYANT for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

In August, 1920, appellee was the operator or controlled the output of two coal mines near Pineville, Kentucky, and appellant, a partnership, was a coal broker. On August 14, 1920, the parties entered into the following contract:

"Pineville, Ky., August 14, 1920.

"Riddle Coal Co., Pineville, Ky.

"Gentlemen: This is to confirm sale to you of twenty-four cars of mine run coal, to be shipped at rate of two cars per week, either from the Mason seam at Ferndale, Ky., or Straight Creek seam at Reams, Ky., at $9.50 per ton f. o. b. mines.

"It is thoroughly understood that you are to take this coal regardless of the condition of the market, and I bind myself to ship same regardless of the market.

"(Signed) M. D. Bell.

"Accepted:
    Riddle Coal Co.
    By D. S. Riddle.
    By G. W. Johnson."

On the same day after the signing of this contract appellant sent to appellee the following order:

"August 14, 1920.

"To M. D. Bell: Ship to Florida China Clay Corp., at Oklahumpka, Fla., 24 cars of mine run, 2 cars per week, price per ton $9.50 f. o. b. mines, available equipment. And gives the shipping instruction, freight prepaid. Have billing agent call the office."

Under the contract and order, appellee shipped no coal until August 24th, when he sent forward one car. From then until the first of November he shipped 17 cars, but at very irregular intervals, and not at the rate of two cars per week. All of these 17 cars he did ship, however, were received and accepted by the consignee without complaint on its part or on that of appellant. About the first of November, 1920, the Florida concern requested appellant to hold up further shipments of coal to it, and thereupon appellant requested appellee to hold

up the balance of the seven cars unshipped until further notice. But that appellant considered the contract of August 14, 1920, then still in existence is clear from the testimony of D. S. Riddle, one of the members of appellant partnership. He testified.

"Q. Why didn't you cancel that contract?

"A. We didn't have instructions from the Florida people to cancel the order and it was our idea to get the business to ship the coal for Bell to get the benefit of it we could. We took it as a better policy and feeling and to better establish our business with the mines to handle the sale of the coal to the best interests of the mine.

"Q. And for that reason you didn't cancel the contract?

"A. We had no instructions from the Florida people to cancel the contract.

"Q. The contract that Bell made wasn't with this China Clay Corporation, it was with the Riddle Coal Company.

"A. That is quite true.

"Q. But the contract was between you, the Riddle Coal Company and Mr. Bell?

"A. Yes, sir.

"Q. You didn't cancel that contract, did you?

"A. No, sir, we didn't.

"Q. You just held it up?

"A. Just as the Florida China Clay Corporation asked us to."

Appellee waited a considerable time for appellant to take the seven cars unshipped, and finally, on its failure or refusal so to do, brought this suit for damages on account of such failure, and from a judgment in his favor appellant bring this appeal.

Appellant defended this action on the theory that as appellee had not shipped the 17 cars, which he did ship, at the rate of two cars per week, nor shipped the whole orders at such rate, he had first breached the contract, which breach excused appellant from further performance on its part. That appellant's position is unsound is clear, for by receiving the coal shipped without complaint, and by requesting appellee to hold up shipping the other seven cars until further notice at which time appellant did *not* consider the contract cancelled, as one of the partnership so testified, appellant clearly waived

the delay in the rate of shipment provided by the contract. W. R. Willett Lumber Co. v. Lloyd Lumber Co., 203 Ky. 397, 262 S. W. 573. Having waived such delay and failing thereafter to take the seven cars unshipped, appellant is clearly liable to appellee for such failure. Appellant's only ground urged for reversal in this court was the failure of the trial court to peremptorily instruct the jury to find for it on the theory above noted. As such theory was unsound, the trial court committed no error in so refusing and its judgment is affirmed.